Good morning, your honors, counsel, and may it please the court. My name is Michael Gomez from the Office of the Federal Public Defender, and I'm appearing on behalf of my client, Ms. Brie Shanae Ford, and I'd like to reserve two minutes for rebuttal. All right. Your honors, the only reason we're in federal court today is because of the repeated constitutional violations by an officer of the law who feels he is above the law because he continues to violate the law and has not faced repercussions for it. And the transfer of this case to federal court was all facilitated by his FBI agent friend. It appears as though we're all in agreement that what LAPD Detective David Vinton did was wrong. There's no question about it. The government doesn't even deign to defend his misconduct because it's indefensible. So what does this court do when the origins... Excuse me. The district court said any violation of continued questioning after she invoked her right to counsel, the remedy for that would be suppression and nothing more. Why isn't that correct? Your honor, yes, there were technical Miranda violations, at least seven of them here. That doesn't include the continued interrogation in the squad car or at the jail facility during the booking. But what takes this case out of the Miranda world, it's not just about technical Miranda violations, but in a due process world, which is where the outrageous misconduct claim lives, or the equal protection world where the selective enforcement claim lives, or in the courts inherited supervisory authority, is what Detective Vinton did with those Miranda... With Ms. Ford's invocations of her Miranda rights and his violations of them. It's that he retaliated against her for invoking Miranda. So it's not just a Miranda violation, it's the retaliation, it's the threats of federal prosecution. So this is one of the most... But the government cites cases saying that there's a prosecutor or an investigator can threaten prosecution if the suspect doesn't cooperate, and if the suspect doesn't cooperate then can prosecute, and there's nothing untoward about that. What's your response to that? If this were just about threats during an interrogation where the individual or the defendant had already waived Miranda rights, where there wasn't repeated trampling over those constitutional rights, that would be a different question, but that's not the circumstances we have here. The circumstances here are, there are clear Miranda violations, there is a clear retaliation because of those invocations of... If the government says it's not a constitutional right, it invokes Vega v. Takeau, and says even ignoring the invocation of the right to counsel is not a constitutional violation, applying Vega v. Takeau in that context. Do you disagree? Well, it's not a per se constitutional violation, but there is no question that Miranda rights are prophylactic rights that came from the Fifth Amendment, and someone can validly invoke Miranda rights during an interrogation, a custodial interrogation, as happened here, and what the law also says is that once someone validly invokes a Miranda right, all questioning must cease. That's the law, and Detective Benson did not follow the law. And if it doesn't cease, then the remedy, the district court said, is you suppress those statements, so I understand they could still be used as impeachment. Correct, Your Honor. But what I want this court to focus on is this is not about Miranda violations. This case is about a due process violation. It's about what Detective Vinton did after Miranda was violated, and the threats he made, the retaliation he made against Ms. Ford because she didn't waive her Miranda rights. And it's he threatened her with federal prosecution, and then followed through on those threats because she didn't waive her rights. So this is not just a Miranda case. It's not about Miranda violations. It's what happened because of her valid invocations of those Miranda rights, and that's a due process violation. As this court has said, an outrageous conduct for outrageous conduct claims, which is one of the claims we presented here, it's when an officer's conduct is so outrageous and so offensive to our universal sense of justice that a prosecution and a conviction cannot stand. That's what we have here. So it's not just Miranda violations. It's the retaliation and the threats. And there's no question that those happen. The government doesn't dispute that that happened. The government also raises the argument that because the federal agent, Ms. Corcoran, said she was not aware of any of these violations in her declaration, and the court credited it, regardless of what happened at the state level, there was no misconduct at the federal level. What's your response to that? So this is the government's attempt, because it can't defend detective misconduct, to separate itself from that misconduct. But there was a clear factual error in the district court's finding that Agent Corcoran didn't know about the invocations, about Ms. Ford's invocations during the interrogation, or that this was in retaliation for her invoking those rights. So I've identified at least, well, as a precursor to all that, there's nothing, there's no case law or precedent prohibiting this court from imputing what happened during that interrogation to Agent Corcoran and the federal case. I've identified at least 19 different indications in the record that suggest, strongly suggest, and undermine the district court's finding that Agent Corcoran didn't know anything about the case, or about what happened in the interrogation. So first, they had discussed, Detective Vinton and Agent Corcoran had discussed Ms. Ford before she was even arrested, and falsely accused of murder because she was released two days later because she had no involvement in it. So they had already discussed her during the interrogation. Detective Vinton texted Agent Corcoran and said, can you file federal gun charges if need be? And she said, 100 percent, I can. Then after Ms. Ford was released, there was constant communication between Detective Vinton and Agent Corcoran over the next several months coordinating this federal case. And if the court looks at the content of those communications, they were all about Detective Vinton's attempts to elicit information from Ms. Ford, which she was not giving. And then because he was unable to get that information, Agent Corcoran continued in the federal investigation. Before you run out of time, do you want to address the implications of Duarte and Rahim for your case? Yes, Your Honor. What I'd like to address in that is that the court under Duarte, which is current binding precedent in this court, the court has not ruled on the en banc petition or vacated the decision. So it's current precedent in this court. And it confirms that the district court here erred at step one of Bruin analysis. So the government's 28-J letter focuses on considerations that happened at step two. Rahimi itself was a step two analysis. What the court found in Duarte was at step one, the Second Amendment does cover the conduct in this case, Ms. Ford's possession of a firearm for self-defense. So at that threshold inquiry, at the very least, this court should remand to the district court so that it can correct its error, clear error of law, and engage in Bruin's step two analysis to determine whether there are historical analogs that would sustain a permanent disarmament as opposed to a temporary disarmament, which the Supreme Court found in Rahimi. Do you want to save the rest of your time? Yes, and if there are no further questions, I'll save the rest of my time. Good morning, Your Honors. May it please the Court, David Williams for the United States, and at counsel table is Alex Hsu, who is co-counsel in the trial court. I would like to begin by talking about defendants' claim that we all agree that something wrong happened here. We do not all agree that something wrong happened here. And it sort of breaks down into two components. There's the Miranda component, where we agree that continuing to question after a defendant has asked to have a lawyer or has invoked a right to remain silent, anything after that point cannot be used. That is a Miranda violation. But prosecuting someone after they invoke Miranda happens all the time. There is nothing wrong with it. That's the reason that the remedy for a Miranda violation is suppression rather than dismissal. And this goes at least all the way back to Bordenkercher from the Supreme Court in the 70s to say... But counsel's response to that would be, as he made, this goes beyond that, right? We're talking about the threat and the retaliation from that. Let me ask you this, because I couldn't quite tell from the record. What is the relationship between Vinton and Corcoran as reflected in the record? Is this a personal relationship? Did they serve on a joint task force together? I'm trying to figure out whether the record revealed the extent of the relationship in terms of trading cases back and forth, working together and the like. Right. So this is in the record and was produced in Discovery as well, which is that Agent Corcoran was an FBI agent who helped with LAPD cases. She did not help with all LAPD cases. It was not a joint task force. Detective Vinton is not a task force officer. There is no formal relationship between them as respect to this case. But Agent Corcoran did assist LAPD when they needed FBI assistance. And so I think that's the scope of the relationship. They did exchange text messages, which were also produced below and I think attached either to our opposition or to the defendant's reply. They spoke about other things as well because Agent Corcoran had a desk near the LAPD homicide detectives and so she was able to talk to them to provide assistance when necessary. That was not this case though. Agent Corcoran was never assigned or ever worked on the homicide investigation in this case. She said that in her declaration, that she had no involvement in this homicide investigation. And so she knew Detective Vinton had previously told the LAPD officers in general that she could take a 922G if they had an appropriate case. And that's how this case came to her, was that she had told them in general that if they thought there was an appropriate case, she could take one. But Detective Vinton was not the officer who made the initial arrest. That was a month and a half earlier. And so when Detective Vinton told her about it, the actual case file, the records, those were all things that were prepared by the officers who made the arrest a month and a half before Detective Vinton ever interrogated Ms. Ford. And so when Agent Corcoran is then bringing the case, investigating the case, what she's looking at for the 922G, which ended a month and a half before Detective Vinton got involved, she's looking at that underlying information from prior. So I hope that answers Your Honor's question. It does. Thank you. I think the issue here is that if prosecuting somebody after violating Miranda rights is a due process violation, that swallows the Miranda suppression rule whole. Because what defendant is suggesting here is by prosecuting, the reason they prosecuted was because she invoked. But that's going to be the issue with many Miranda violations. And so if you require dismissal after continuing to question, all of those cases that talk about suppression have to be wrong. And that can't be. The Supreme Court has not gone remotely that far. And particularly in light of the Vega Viteko notion that Miranda on its own is not a separate constitutional violation. It is a prophylactic. And in this case, the defendant never actually said anything. We're talking about an interrogation that lasted 10 minutes, more or less. I think it was 11 and a half, 12. The recording is only 15. And it starts with a bunch of silence and ends with silence. It's a short interview. And Ms. Ford never says anything at all, really, other than that she wants a lawyer. There's not any incriminating information said. And if you listen to the recording, Detective Vinton doesn't actually ask her about herself. And this was another point we made in the briefing, which is that the questions were about other people. Even Miranda, even the Fifth Amendment, does not protect incriminating statements as to other people. You can be compelled to give statements about other people. The problem, as I understand it, is the defendant said, if you don't cooperate. He violated her Miranda right and then said, and if you don't cooperate, I'm going to elevate this and it'll be prosecuted federally, which will be much worse for you, or words to that effect, which seems to be different than a mere Miranda violation. It's different from a Miranda violation, but it's no different from Lopez, where an officer says cooperate or else. And this court has said that that is perfectly acceptable. And I think that there is always at least some implicit request of talk to us and we will help you. Talk to us or else is part of the interrogation that happens when police officers are talking to a defendant about a criminal violation, that the only motivation for a defendant to talk is to benefit them if they've already committed a crime. And so I think that that or else is part of the nature of a conversation between police and defendants who've been arrested. Right. But it can't be that every Miranda violation, the only remedy is suppression, right? Because you wouldn't have the outrageous government conduct type of motions. That may not be the facts of this case, but we need to weigh each case on its own facts.  Each case on its own facts. And I think one of the, I think, illuminating components of this is the court has talked about different categories of outrageous misconduct, outrageous conduct that can warrant dismissal. And it's not, there's no way to have a single universe of outrageous conduct because you never know what could happen in the future. But the categories that have been talked about are physical or psychological coercion. And when the government agents direct the entire enterprise from the get go. And I could see, a Miranda violation could certainly be psychological or physical coercion if it extends for a very long time. I think we cited a brief in our case where the officer threatened the wrath of God and the remedy was suppression. And this court subsequently affirmed the conviction of 400 some odd month sentence that if it is sufficiently coercive, yes, a Miranda violation could absolutely be outrageous conduct. But again, this was a case where the interview lasted about 10 minutes. Ms. Ford never had any difficulty saying she didn't want to talk. All she said was that she didn't want to talk. She never said anything incriminating. There was no coercive component to this interrogation. And so there's, to the extent there's a Miranda violation, there's no coercion in the Miranda violation. Do you want to address the implications of Duarte and Rahimi? Yes, your honor. I think the easiest and most straightforward way to handle this case would be to look at Duarte and of course that en banc situation is still pending. But to look at Duarte and say that it expressly deals with nonviolent felons. That Duarte is an as applied challenge case dealing with nonviolent felons. And in this case, we have a defendant with a robbery conviction, a burglary conviction, a juvenile robbery adjudication. She's a violent felon. And so Duarte would not extend to this case. And so on the as applied portion, the as applied portion was not made below. So that's to be reviewed for plain error. There's no case anywhere that says that violent felons can have firearms. And so that's dispositive on the plain error portion. On the pure legal question, the de novo question of whether 922G is facially unconstitutional, I think Rahimi is sort of dispositive on this. It says that, and I'm quoting, prohibitions like those on the possession of firearms by felons are presumptively lawful. I don't see how this court can get around that statement by Rahimi at this point. Perhaps future developments by the Supreme Court will address it. They will surely take up a 922G1 case in the near future. But at this point, prohibitions on the possession of firearms by felons are presumptively lawful. And I know we noted that that's contradictory to Duarte's commentary. The way that it overruled Feng Shui was to say that that language from Heller is no longer valid. I think Rahimi undercuts that severely. But the simple answer in this case is she's a violent felon and Duarte does not apply to her. Unless the court has further questions, I would be happy to submit. Fair enough. Thank you. In the couple of minutes I have left, I just want to correct a few things, clarify a few things from the record based on the government's arguments. First, I'd like to address Judge Wynn's question about the relationship between Detective Vinton and Agent Corcoran and the federal government's involvement, her involvement specifically, in the murder investigation because the government says she was never involved at all in the homicide investigation, but she was. So when Agent Corcoran arrested Ms. Ford, it was for the express purpose of providing Detective Vinton another opportunity to interview her again, as her text message said, to interview her again on the unrelated homicide investigation. Then, Agent Corcoran took Ms. Ford after her arrest to the Van Nuys police station, Detective Vinton works in Sawtelle, which is 12 miles away, for him to interview her again. She also, Agent Corcoran, also offered to interview Ms. Ford while she was a captive audience in the squad car. Then after the arrest, after this interrogation, which was not recorded per FBI policy, the government obtained a search warrant to search Ms. Ford's phone, which was relevant to the homicide investigation, but not the gun charges here. And then the federal prosecutors asked for Ms. Ford's passcode for the phone and asked if she would be willing to cooperate in the homicide investigation. So the federal gun charges here never had anything to do with the federal gun charges here. They were all related to the state homicide investigation. We keep talking about Miranda violation and prosecutions. This case is not a vindictive prosecution or selective prosecution case. It's outrageous misconduct, dismissal under the court's inherent supervisory authority for Detective Vinton's long history of misconduct. The type of person who would do what Detective Vinton did here is someone who's done it before. He was implicated in the 1990s Rampart scandal and has been the subject of 11 lawsuits and has drawn a rare public rebuke from prosecutors for falsifying evidence, perjuring himself. So this is the type of person who exacted retaliation on Ms. Ford. And finally, regarding Duarte and Rahimi and their effect on this case, the government appears to confuse step two of the Bruin analysis when he talks about violent felons and nonviolent felons and that disarmament laws are presumptively lawful. That's a step two analysis. We're talking about step one, and the district court's error was clear at step one when it found that the Second Amendment didn't apply at all to prior felons. But we know now that it does. So we ask that this court reverse and vacate Ms. Ford's conviction, dismiss the indictment, or alternatively reverse for further proceedings. Thank you, Your Honors.
judges: IKUTA, NGUYEN, Anello